1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

---

**ESTATE OF XANDER MANN, AMY PICKERING, JUSTIN MANN, and HECTOR DEL ALTO,**

**Plaintiffs**

**v.**

**COUNTY OF STANISLAUS, et al.,**

**Defendants**

_____

**AND RELATED CROSSCLAIMS**

**CASE NO. 1:21-CV-1098 AWI SKO**

**ORDER ON DEFENDANT HATFIELD'S MOTION TO DISMISS**

(Doc. No. 70)

---

This case arises from the fatal encounter between minor Decedent Xander Mann ("Decedent" or "Mann") and members of the Stanislaus County Sheriff's Department ("SCSD"). Plaintiffs allege state law claims for violation of the California Constitution, the Bane Act (Cal. Civ. Code § 52.1), assault/battery, negligence, and wrongful death, as well as federal claims under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments.  Currently before the Court is Defendant Stanislaus County Sheriff's Deputy Sgt. Darwin Hatfield's ("Hatfield") Rule 12(b)(6) motion to dismiss all claims alleged against him in the First Amended Complaint ("the FAC") of the Estate of Mann, Amy Pickering, and Justin Mann ("the Mann Plaintiffs").[1]  For the reasons that follow, Hatfield's motion will be granted and all plaintiffs will be ordered to file a amended unified complaint.

---

[1] This case was consolidated with *Del Alto v. County of Stanislaus, et al.*, 1:22-cv-0384 DAD SAB on July 14, 2022. See Doc. No. 54.  Of note, minor Plaintiff Hector Del Alto now has what amounts to a crossclaim against the Estate of Mann.  No unified complaint has been filed that merges the complaint filed by Del Alto with the complaint filed by the Mann Plaintiffs.  The current motion involves only the claims brought by the Mann Plaintiffs against Hatfield.

**RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Yoshikawa v. Seguirant, 41 F.4th 1109, 1114 (9th Cir. 2022). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Benavidez, 993 F.3d at 1145. The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Armstrong v. Reynolds, 22 F.4th 1058, 1070 (9th Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Miller v. Sawant, 18 F.4th 328, 336 (9th Cir. 2022). Plaintiffs cannot "rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery." Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1177 (9th Cir. 2021). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

1 **FACTUAL BACKGROUND**

2     From the FAC, on May 18, 2021, at around 2 a.m., 16 year old Mann was driving his 1993

3 Ford Escort in Stanislaus County around the City of Modesto.  Mann had four companions with

4 him in his car, a 14 year old in the front passenger seat, 18 year old Rhiannon Taylor in the rear

5 passenger seat, a 15 year old in the rear center seat, and 16 year old co-plaintiff Hector Del Alto in

6 the rear passenger seat behind the front passenger seat.  Mann's vehicle was pulled over by

7 Stanislaus County Sheriff's Deputies Tovar and Stanley for two Vehicle Code violations – an

8 expired registration and an inoperable headlight.

9     Tovar approached the driver's side of Mann's vehicle and noticed that the car had five

10 teenaged occupants.  Mann rolled his window half-way down, Tovar told Mann to turn off the car,

11 and then Mann drove away from the scene without complying with Tovar's command.  Tovar

12 returned to his patrol car, reported Mann's vehicle and actions over the radio, indicated that

13 Mann's vehicle had five occupants, and then initiated an allegedly "dangerous vehicle pursuit."

14 Defendant Stanislaus Sheriff's Deputy Gerardo Zazueta ("Zazueta") and Hatfield, among others,

15 joined the pursuit.  Zazueta in a large SUV was the lead pursuit vehicle immediately behind Mann.

16     Hatfield as a supervising sergeant was "monitoring" the situation.  Hatfield knew that

17 deputies were in pursuit of a vehicle for Vehicle Code violations, the vehicle had five occupants,

18 the pursuit was at low speeds, and there was no traffic in the area.  Hatfield requested that the

19 Modesto Police Department ("MPD") deploy spike-strips to stop Mann's vehicle, and MPD began

20 actively attempting to get ahead of pursuit to deploy spike-strips.  However, it does not appear that

21 MPD ever effectively deployed the spike-strips.

22     After traveling about 15 miles in 20 minutes, Zazueta requested permission from Hatfield

23 to use a Pursuit Intervention Technique ("PIT") on Mann's vehicle.  Zazueta knew that the pursuit

24 was based on minor Vehicle Code violations, the pursuit was low speed, there was no traffic, and

25 the vehicle was emitting smoke and had five occupants.  Zazueta had utilized the PIT in the past

26 and believed that it would probably end the pursuit.  Hatfield authorized Zazueta to utilize a PIT.

27 The Mann Plaintiffs allege that Hatfield's authorization of the PIT violated POST and SCSD

28 policies, including Policy 314 and Policy 314.7.

1 Zazueta used a PIT against Mann's vehicle.  The PIT caused Mann's vehicle to spin out in
2 an unincorporated area of Stanislaus County.  When Deputy Stanley saw Zazueta utilize the PIT,
3 he exclaimed: "Watch out!  Watch out!  Watch out for your partner!  Watch out for your partner!
4 Gerardo, there's kids in there!"  Plaintiffs allege that Zazueta's use of the PIT violated POST
5 policies and SCSD policies, including Policy 314 and Policy 314.7.

6 After the spinout, Mann's vehicle moved in reverse and came to a stop against a curb.  At
7 that time, Mann and his passengers agreed that it was time to end the pursuit and for Mann to
8 surrender.  Mann slowly moved his vehicle forward from the curb.  Zazueta, Hatfield, and Tovar
9 moved their patrol vehicles to "box in" and "triangulate" Mann's vehicle.  The three officers
10 stopped their vehicles in a manner that allegedly "forced" Mann to maneuver his car away from
11 the patrol vehicles in order to avoid a collision.

12 Mann drove his vehicle slowly forward at about 5 m.p.h. in a gap between Zazueta and
13 Tovar's vehicles.  Mann then reached for the key to turn off his vehicle while he drove his car
14 away from the patrol vehicles to avoid a collision.  Mann moved his vehicle slowly in the opposite
15 direction and passed Zazueta and Tovar's vehicles.  Mann's car did not come close to hitting any
16 patrol vehicle.  However, Zazueta quickly exited his vehicle on the driver side, drew his pistol, and
17 pointed it at Mann's vehicle as it slowly moved passed Zazueta and his patrol vehicle.  By getting
18 out of his patrol vehicle, Zazueta took up a more dangerous position.  Mann never drove his car in
19 a manner that was a threat to Zazueta or anyone else, rather, Mann slowly drove his car forward
20 while attempting to remove the key from the ignition.  Zazueta was never in the path of Mann's
21 vehicle and was never in danger of being struck by Mann's vehicle.  Nevertheless, Zazueta fired
22 his pistol at least three times at Mann's vehicle.  Plaintiffs allege that these gunshots violated
23 POST policies and SCSD policies, including Policy 300, Policy 300.4.1, and Policy 314.7.3

24 Zazueta's gunshots struck Mann and Del Alto.  Del Alto's forehead was grazed by one of
25 the bullets.  Mann was struck twice in the head, with one shot hitting near Mann's left temple and
26 the other shot hitting the back left side of his head.  Mann immediately lost consciousness.
27 Mann's body fell limp in the driver's seat and his foot depressed the accelerator.  Mann's vehicle
28 accelerated forward for several yards and then began to arc to the left before eventually crashing

1   head-on into a utility pole.  The pursuit had ended after approximately 20 minutes had elapsed and
2   15 miles had been traveled.

3       Numerous Sheriff's deputies approached Mann's vehicle and began the process of
4   removing the occupants, including Mann.[2]  Despite several opportunities to do so, Zazueta failed
5   to activate his body warn camera during the vehicle pursuit and did not do so until well-after the
6   incident had concluded and Mann's body was pulled from the vehicle.  Hatfield also failed to
7   activate his body warn camera during the incident.  Hatfield and Zazueta's failures to turn on their
8   bodycams allegedly violated SCSD Policy 445.  While other deputies did turn on their cameras,
9   those deputies often muted their cameras.  Hatfield, and others, also muted their cameras while
10  describing with their supervisors the pursuit and shooting immediately after it occurred.  This also
11  allegedly violated Policy 445.

12      Mann was transported to a hospital and placed on life support, but was also pronounced
13  braindead.  Mann was removed from life-support several days later.  Del Alto required forty-eight
14  stitches to treat his head wound.

15      The FAC alleges state and federal claims against Hatfield.  After incorporating the general
16  factual allegations by reference, each claim alleges that Hatfield "failed to intercede in, was an
17  integral participant in, and/or aided and abetted [Zazueta]'s use of unreasonable and excessive
18  force against Mann."  The FAC also alleges that Hatfield acted with an evil motive or intent, acted
19  with a reckless or callous indifference to rights, or acted wantonly or oppressively.

20

21              **DEFENDANT'S MOTION**

22      *Defendant's Arguments*

23      Hatfield argues that the FAC's allegations do not sufficiently connect his conduct with
24  Mann's injuries.  It was not reasonably foreseeable that the PIT maneuver would fail to stop
25  Mann, nor was it foreseeable that Mann would continue to drive or drive towards deputies.
26  Further, the allegation that the authorization for the PIT maneuver violated policies is conclusory.

27  _____
28  [2] This is the Court's shorthand for a number of more specific allegations in the complaint.  Given the issues raised by
    the motion to dismiss, it is unnecessary to provide a more detailed description.

1   The use of a PIT maneuver is authorized by the SCSD and the policies cited by Plaintiffs provide

2   guidelines for the use of PIT maneuver; the policies do not forbid the maneuver's use.  Hatfield

3   made the decision with knowledge that there was no traffic and that low speeds were involved.

4   Thus, the bare allegation that the maneuver was contrary to policy need not be accepted as true.

5   Additionally, the allegations do not suggest conduct by Hatfield that shocks the conscience, or that

6   Hatfield was deliberately indifferent to Mann's rights.  Hatfield argues that he had monitored the

7   situation and made a decision to authorize a PIT maneuver given the speeds involved and the

8   absence of traffic, and he maneuvered his vehicle in an attempt to box in Mann after the PIT

9   maneuver.  These actions demonstrate reasonable conduct.  Finally, with respect to the state law

10  claims, Hatfield argues that he is entitled to immunity under Cal. Gov. Code § 820.8.

11          *Plaintiffs' Opposition*

12          Plaintiffs argue that Hatfield, as Zazueta's supervisor, contributed to the use of excessive

13  force against Mann in at least three ways:  (1) authorizing the PIT in inappropriate circumstances;

14  (2) using a patrol vehicle to box-in and triangulate Mann's vehicle, which forced Mann to

15  maneuver through a gap away from the patrol vehicles, and (3) failing to properly activate and use

16  his bodycam.  Plaintiffs argue that, although Hatfield argues that there is an insufficient link

17  between these actions and Mann's injuries, proximate causation is a question of fact that is not

18  properly resolved during a motion to dismiss.  Plaintiffs contend that Hatfield's authorization of a

19  PIT maneuver and use of a patrol vehicle to box-in Mann were actions that foreseeably created the

20  need to use force.  Relatedly, Plaintiffs also argue that there was no need for Hatfield to quickly

21  authorize the use of the PIT maneuver or to try and box-in Mann with patrol vehicles.  No other

22  cars were in the area, and these actions unnecessarily created a sense of urgency and created the

23  circumstances whereby a use of force was necessary.  Although Mann was not engaging in

24  criminal conduct and was not a danger to Zazueta, Zazueta chose to take up a more dangerous

25  position which enabled him to justify his decision to use deadly force.  Hatfield's own conduct

26  was unreasonable, violated various policies, and caused the shooting of Mann.  Finally, § 820.8

27  immunity does not preclude liability based on a person's own acts of negligence or based on a

28  person's aiding and abetting another in a wrongful act.  Because the FAC alleges negligent

1  conduct by Hatfield, and because the FAC alleges that Hatfield aided and abetted Zazueta's

2  wrongful conduct, § 820.8 does not apply to Hatfield.

3  *Discussion*

4  I.   Hatfield's Conduct

5     There are a number of issues raised by the parties and the FAC.  However, three

6  actions/events appear to be central to each cause of action alleged against Hatfield by the Mann

7  Plaintiffs:  authorization and use of a PIT, "boxing-in" Mann's vehicle after the PIT, and

8  Zazueta's discharge of his firearm.  Neither the briefing nor the allegations in the FAC specifically

9  clarify whether these three actions form independent bases for the causes of action, for example,

10  three Fourth Amendment excessive force claims with one based only on the PIT, one based only

11  on boxing, and one based only on the shooting.  It is apparent from the FAC and the briefing,

12  however, that the shooting is an independent basis for each cause of action.  What is unclear is

13  whether the PIT and boxing are the bases of stand-alone claims, are merely support for the

14  shooting claim, or both.  For purposes of this motion, the Court will analyze these events as both

15  stand-alone claims and support for the shooting claim.

16     1.   PIT Maneuver

17     A PIT maneuver is a method of forcing a fleeing car to abruptly turn sideways, which

18  causes the driver to lose control and stop."  Longoria v. Pinal Cty, 873 F.3d 699, 703 n.2 (9th Cir.

19  2017).  In performing a PIT maneuver,  "a police officer bumps the rear quarter panel of the

20  suspect's vehicle with the front quarter panel of the officer's vehicle, sending the suspect vehicle

21  into a spin." Wilkinson v. Torres, 610 F.3d 546, 549 n.1 (9th Cir. 2010); see also Longoria, 873

22  F.3d at 703 n.2.  The quantum of force of a PIT maneuver can vary depending on the

23  circumstances.  See Sabbe v. Washington Cty. Bd. of Comsrs., 537 F.Supp.3d 1205, 1217 (D. Or.

24  2021).  However, it has been accepted that, when executed at lower speeds by properly trained

25  officers, a PIT is a maneuver that is intended to stop a fleeing car safely and quickly.  See Harris v.

26  Coweta Cty., 433 F.3d 807, 816-17 (8th Cir. 2005);[3] John v. Berry, 469 F.Supp.2d 922, 935-36

27  (W.D. Wash. 2006).

28
---
[3] Rev'd *sub nom* on other grounds Scott v. Harris, 550 U.S. 372 (2007).

Here, the Court is not satisfied that the FAC adequately alleges that the authorization of the PIT maneuver was unreasonable.  At the time the PIT maneuver was requested by Zazueta, the FAC alleges that:  Hatfield was monitoring the situation, there was no traffic in the area, it was around 2:00 a.m., minor vehicle code violations were at issue, Mann's vehicle had five occupants, the pursuit was at "low speeds," Mann and the officers were in an unincorporated area outside of Modesto, and the pursuit had lasted about 20 minutes.  The FAC quotes two SCSD policies and alleges that the authorization of the PIT violated those policies as well as a POST policy. However, the FAC does not actually explain why the authorization violated these policies.[4]

Case law indicates that the PIT maneuver is designed to be a safe tactic to end a vehicle pursuit *inter alia* when performed at low speeds, by a trained individual, and in light of the relevant surrounding circumstances.  See Harris, 433 F.3d at 815-16; see also John, 469 F.Supp.2d at 936.  The allegation of low speed checks an important box.  A pro-longed chase that had no indication of ending soon, and no traffic in a rural area with no indication of dangerous terrain features (e.g. a cliff or narrow residential streets), seem to check other relevant boxes as well. While the FAC makes no express allegations about Zazueta's training on PIT maneuvers, the FAC alleges that Zazueta had experience in performing PIT maneuvers.  Experience performing PIT maneuvers suggests that Zazueta had the appropriate training.  Further, the PIT maneuver was largely successful and appears to have been properly performed.  Mann's car spun out, actually came to a stop against a curb, and Mann and his occupants at that point decided to give up.  There is no indication that Mann suffered any injuries between the point in time in which Zazueta's car touched Mann's vehicle (i.e. the beginning of the PIT maneuver) and the point in time in which Mann's vehicle came to a stop against the curb (i.e. the end of the PIT maneuver).  The apparent successful application of the PIT maneuver without injury also indicates that Zazueta had appropriate training.[5]  Therefore, the allegations indicate that Hatfield's authorization of the PIT

[4] When compared to the factual allegations in the FAC, Hatfield's authorization does not clearly or obviously violate the policies quoted in the FAC.  In order for the FAC to plausibly allege that these policies were violated, an allegations that expressly explains how and why the policies were violated is necessary.

[5] The Court is not holding that the presence of an injury directly from the PIT would *per se* show that Zazueta was not properly trained.  The Court is merely holding that the lack of injury, in the context of the other allegations in the FAC, indicates that Zazueta was properly trained.

1   maneuver was reasonable in light of the circumstances and existing law.[6]  See Harris, 433 F.3d at

2   816-17; John, 469 F.Supp.2d at 936.

3          To state a plausible claim, additional facts, including but not limited to allegations that

4   clearly explains how and why the authorization of the PIT was unreasonable,[7] are needed.

5   Because the allegations do not sufficiently allege that Hatfield's authorization of the PIT

6   maneuver was unreasonable or somehow unlawful, the authorization cannot serve as the basis for

7   any claim alleged in the FAC against Hatfield.[8]

8          2.      Boxing-In Mann's Vehicle

9          The FAC alleges that after Mann's vehicle came to rest against a curb following the PIT

10  maneuver, Mann decided to give up.  Mann slowly drove his car forward.  Hatfield, Zazueta, and

11  Tovar then used their vehicles to box-in and triangulate Mann's vehicle.[9]  However, Hatfield,

12  Zazueta, and Tovar stopped their vehicles in a manner that "forced" Mann to maneuver his vehicle

13  away from the patrol cars.  Mann continued to drive his car at about 5 m.p.h. between a gap by

14  Tovar and Zazueta's cars.

15

---

16  [6] The Mann Plaintiffs argue that the authorization of the PIT maneuver was too hastily performed and resulted in
    Hatfield creating an unnecessary urgency.  Cf. Nehad v. Bower, 929 F.3d 1125, 1135 (9th Cir. 2019).  However, the
17  FAC alleges that the chase had covered about 15 miles and had lasted about 20 minutes.  That is far from a typical
    "traffic stop."  Waiting 15 miles and 20 minutes before authorizing the PIT is not hasty action, particularly
18  considering the other alleged facts which are consistent with safe application of the PIT, as well as an apparently
    unsuccessful attempt to utilize road-spikes.  Moreover, after the PIT maneuver was performed and had been
19  completed, Mann's car was stopped against the curb.  It was at that point that Mann decided to give up.  Thus, there
    was no injury caused by the PIT maneuver itself.  Under these circumstances, authorization of the PIT maneuver did
20  not create an unnecessarily dangerous situation or an unnecessary sense of urgency.

21  [7] Policy or regulatory violations may be considered, along with the surrounding circumstances, in determining
    whether a constitutional violation occurred.  See Glenn v. Washington Cty, 673 F.3d 864, 875 (9th Cir. 2011);
22  Drummond v. City of Anaheim, 343 F.3d 1052, 1059 (9th Cir. 2003).  However, for purposes of the Mann Plaintiffs'
    § 1983 claims, the actionable conduct is the violation of Mann's constitutional rights, it is not the mere violation of
23  internal regulations or policies.  See Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009); cf. Ove v. Gwinn, 264
    F.3d 817, 824 (9th Cir. 2001); cf. also Peck v. Montoya, 51 F.4th 877, 892 (9th Cir. 2022) (noting that a violation of
24  department policy does not per se make an officer an integral participant in another's constitutional violation).

25  [8] Courts may sua sponte raise inadequacies in a complaint in the context of a Rule 12(b)(6) motion.  See Omar v. Sea
    Land Services, Inc., 813 F.2d 986, 991 (9th Cir. 1987); Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir. 1981).
26  Although Zazueta did not move to dismiss any claims in the FAC, the Court's analysis of Hatfield's authorization
    would appear to apply equally to Zazueta's request and use of the PIT maneuver.  To the extent that the Mann
27  Plaintiffs intend to allege stand-alone claims based only on Zazueta's use of the PIT maneuver, no plausible claim is
    stated.

28  [9] The Court takes this as an allegation that the deputies used their vehicles to try and block and surround Mann's
    vehicle in a triangle formation, thereby preventing Mann from driving and evading a detention any further.

The FAC's allegations do not demonstrate that Hatfield's use of his vehicle to box-in and block Mann's car was unreasonable.  There is no allegation or indication that Hatfield's (or any other deputy's) patrol vehicle hit Mann's car in the boxing-in process, and Mann was not directly injured from the maneuver.  Moreover, instead of simply turning off his vehicle while it was fully stopped against a curb, Mann began to drive again, albeit at a very slow pace.  Mann driving his car forward after it was at a complete stop against a curb is objectively more consistent with an attempt to continue flight than with an attempt to surrender.  Given that Mann had been fleeing for about 20 minutes and that his vehicle had moments earlier come to a complete stop after the performance of a PIT maneuver, moving police vehicles to block Mann and prevent him from moving or building up speed to continue fleeing seems entirely appropriate and reasonable.

It is true that the FAC alleges that boxing-in Mann's vehicle "forced" Mann to drive forward between two of the police vehicles.  However, that allegation appears illogical and implausible.  The purpose of boxing-in was to stop Mann's vehicle from moving.  That is, the purpose of boxing-in is to "force" a car to stop, not to force it to continue to move forward slowly between patrol vehicles.  It is unknown why Mann did not simply apply his brakes after he had moved forward, placed the vehicle in park, and then turned off the vehicle in reaction to the boxing-in, particularly if Mann had decided to give up and end the chase.  Without additional explanation, the Court cannot envision how the boxing-in maneuver "forced" Mann to keep his car moving because he could have applied his brakes and stopped.  Moreover, even if the boxing-in maneuver did somehow "force" Mann to move forward, moving forward is not itself an injury.  Without additional factual allegations or an allegation that explains why boxing-in Mann's vehicle was unreasonable or unlawful, no plausible claims are stated based on the "boxing-in" maneuver.

Because the allegations do not sufficiently allege that Hatfield's boxing-in maneuver was unreasonable or somehow unlawful, boxing-in cannot serve as the basis for any claim alleged in the FAC against Hatfield.[10]

---

[10] Although Zazueta did not move to dismiss any claims in the FAC, cf. See Omar, 813 F.2d at 991; Wong, 642 F.2d at 361-62, the Court's analysis of Hatfield's boxing-in would appear to apply equally to Zazueta boxing-in Mann's vehicle.  To the extent that the Mann Plaintiffs intend to allege stand-alone claims based only on Zazueta boxing-in Mann's vehicle, no plausible claim is stated.

1        3.     Shooting by Zazueta

2      In relevant part, the FAC alleges that Mann was driving his vehicle very slowly in a gap

3 between Zazueta's vehicle and Tovar's vehicle.  Mann was attempting to remove his key from the

4 ignition and was not driving his car in a manner that was a threat to anyone, including Zazueta.  In

5 fact, Zazueta allegedly was never in the path of Mann's vehicle.  However, Zazueta exited his

6 vehicle, drew his gun, turned and approached the driver-side of Mann's vehicle, and then shot

7 three times as Mann's vehicle drove past.

8      The FAC demonstrates that Zazueta is the only officer who discharged his firearm.

9 Hatfield, as a supervisor, cannot be vicariously liable for Zazueta's gunshots under state law or

10 § 1983.  See Lemire v. California Dept. of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013);

11 Malloy v. Fong, 37 Cal.2d 356, 378 (1951).  Recognizing this, the FAC alleges for each cause of

12 action that Hatfield failed to intervene, was an integral participant, or aided and abetted Zazueta.

13         a.     Failure to Intervene

14      Law enforcement officers have a duty to intercede when a fellow officer violates the

15 constitutional rights of a suspect or other citizen.  Tobias v. Arteaga, 996 F.3d 571, 583 (9th Cir.

16 2021); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).  If an officer fails to intercede,

17 that passive officer will be held liable for violating the same constitutional right that was violated

18 by the active officer.  Tobias, 996 F.3d at 584; United States v. Koon, 34 F.3d 1416, 1447 n.25

19 (9th Cir. 1994).[11]  Thus, "an officer who failed to intercede when his colleagues were depriving a

20 victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest

21 would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth

22 Amendment rights."  Tobias, 996 F.3d at 584 (quoting Koon, 34 F.3d at 1447 n.25).  However,

23 "officers can be held liable for failing to intercede only if they had an opportunity to intercede."

24 Tobias, 996 F.3d at 584; Cunningham, 229 F.3d at 1289. Similarly, if an officer is unaware of a

25 constitutional violation as it is occurring, the unaware officer cannot be held liable.  Ramirez v.

26 Butte-Silver Bow Cnty., 298 F.3d 1022, 1029-30 (9th Cir. 2002); see also Tobias, 996 F.3d at 584.

27

28 [11] Reversed on other grounds, 518 U.S. 81 (1996).

Here, the FAC clearly alleges that Hatfield was present at the time that Zazueta shot into Mann's vehicle.  However, the FAC fails to plausibly allege a failure to intervene.  Specifically, the FAC fails to plausibly allege that Hatfield had a reasonable opportunity to intervene.  The FAC suggests that Hatfield and Tovar were in their vehicles at the time Zazueta fired the shots and could not have physically stopped Zazueta.  Further, there are no allegations that Hatfield saw Zazueta get out of his vehicle, saw Zazueta point his gun at Mann's car, or knew that Zazueta was attempting to fire his gun at Mann's car.  Further, there is nothing to suggest that a prolonged period of time elapsed from the time that Zazueta exited his vehicle to the time that he fired three shots, nor is there anything to suggest that the three shots were not fired together at a fast pace.  Simply because Hatfield was at the scene in his patrol vehicle is not enough to support the legal conclusion that he unlawfully failed to intervene.  Additional factual allegations that show Hatfield had a reasonable opportunity to intervene and stop the shots are necessary to plausibly allege a failure to intervene.  Cf. Tobias, 996 F.3d at 584; Ramirez, 289 F.3d at 1029-30.

          **b.**    <u>Integral Participation</u>

Liability under § 1983 extends to those officers who are integral participants in a constitutional violation, even if the individual officers' actions do not themselves rise to the level of a constitutional violation.  See <u>Keates v. Koile</u>, 883 F.3d 1128, 1241 (9th Cir. 2018); <u>Bravo v. City of Santa Maria</u>, 665 F.3d 1076, 1089-90 (9th Cir. 2011).  Integral participation requires that an officer be instrumental in effectuating a constitutional violation or have some fundamental involvement in the conduct that caused the constitutional violation.  See <u>Hernandez v. Skinner</u>, 969 F.3d 930, 941 (9th Cir. 2020); <u>Nicholson v. City of L.A.</u>, 935 F.3d 685, 691-92 (9th Cir. 2019).  However, an officer's presence alone is insufficient; the officer must be more than a "mere bystander" to a constitutional violation.  See <u>Bonivert v. City of Clarkston</u>, 883 F.3d 865, 879 (9th Cir. 2018); <u>Bravo</u>, 665 F.3d at 1090.  Integral participation liability may be found only if:  (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation; or (2) the defendant sets in motion a series of actions by others which he knows or reasonably should know would cause others to inflict the constitutional injury.  <u>Peck v. Montoya</u>, 51 F.4th 877, 891 (9th Cir. 2022).  To

1   survive a motion to dismiss, a complaint must plausibly allege that the relevant defendants were

2   integral participants in the violation of the plaintiff's constitutional rights.  <u>Keates</u>, 883 F.3d at

3   1242.

4                    (1)      "Common Plan"

5          The Mann Plaintiffs' opposition does not aver that Hatfield acted in accordance with a

6   common plan with respect to the shooting.  Further, the FAC does not allege that there was a

7   common plan to use excessive force or to shoot Mann, nor does the FAC allege that Hatfield was

8   aware that Zazueta was going to unlawfully shoot Mann.  Instead, the shooting appears to have

9   been unplanned.  <u>Cf.</u> <u>Peck</u>, 51 F.4th at 891.  Therefore, to the extent that the "common plan"

10  method of demonstrating integral participation may be at issue, the FAC does not plausibly allege

11  such a theory against Hatfield.  <u>See</u> <u>id.</u> at 889 (describing and discussing *Boyd v. City of Benton*,

12  374 F.3d 773 (9th Cir. 2002) as illustrative of conduct performed in accordance with a common

13  plan).

14                   (2)      "Set in Motion"

15         The Mann Plaintiffs' opposition avers that Hatfield's authorization of the PIT maneuver

16  and boxing-in Mann's vehicle were acts that Hatfield knew or should have known would lead to

17  the shooting by Zazueta.  The Mann Plaintiffs further contend that Hatfield's arguments regarding

18  proximate causation are improper at this stage in the proceeding, and that the allegation that

19  Hatfield's actions proximately caused Mann's injuries is sufficient.

20         The second method of demonstrating integral participation considers the defendant's

21  knowledge or intent and the foreseeability of the consequences of the defendant's conduct.  <u>See</u>

22  <u>Peck</u>, 51 F.4t h at 890 ("[A] standard of pure but-for cause, *not tied to the defendant's knowledge*

23  *or intent*, would subject to liability not only the non-shooting deputies . . ., but also the 911

24  dispatcher who sent [the deputies] to the scene . . . .") (emphasis added) & at 891 (holding that

25  while it was perhaps "foreseeable that a shooting might take place when the deputies arrived on

26  the scene of a 911 call about an encounter in which an individual had brandished a weapon and

27  was behaving erratically," the non-shooting defendants "had no reason to know that an

28  *unconstitutional* shooting would take place.") (emphasis in original).  Similarly, a § 1983 plaintiff

must show that a defendant's conduct was the proximate cause of an injury.  See OSU Student

Alliance v. Ray, 699 F.3d 1053, 1072 n.12 (9th Cir. 2012).  "Proximate cause is often explicated

in terms of foreseeability or the scope of the risk created by the predicate conduct."  Paroline v.

United States, 572 U.S. 434, 445 (2014); Hernandez, 969 F.3d at 942.  Thus, proximate causation

generally "exists only when a harm was a foreseeable result of the wrongful act."  Bliss Sequoia

Ins. & Risk Advisors, Inc. v. Allied Prop. & Cas. Ins. Co., 52 F.4th 417, 420 (9th Cir. 2022);

United States v. George, 949 F.3d 1181, 1187 (9th Cir. 2020); see also OSU Student Alliance, 699

F.3d at 1072 n.12 (". . . the defendant is only liable is his conduct foreseeably caused the injury.").

Foreseeability is thus considered for "set in motion" integral participation liability, and for § 1983

liability in general.  In this case, for purposes of both integral participation and the general

elements of § 1983, the Court concludes that the FAC does not plausibly allege foreseeability.

First, with respect to authorizing the PIT maneuver, the scope of the risk created by

Hatfield's authorization most obviously encompasses injury from an automobile.  Zazueta

somehow performing the PIT maneuver incorrectly and thereby causing a crash, or Zazueta

actually ramming Mann's vehicle and thereby injuring the occupants or causing a crash, or Mann

losing complete control of his vehicle and flipping or crashing are what the readily foreseeable

consequences and scope of risk would be from Hatfield's authorization.[12]  This is because the PIT

maneuver has everything to do with motor vehicles and nothing to do with firearms.  Moreover,

there is nothing about the pursuit of Mann as alleged in the FAC that clearly suggests gunfire of

any kind, lawful or unlawful, was probable or reasonably foreseeable.  Because there are no

allegations that sufficiently indicate that Hatfield knew or should have foreseen that his

authorization of an apprehension technique that relies entirely on an automobile would lead to the

unlawful shooting of Mann, the FAC fails to plausibly allege an integral participation theory

specifically, and a § 1983 claim in general, based on Hatfield's authorization of the PIT.  Cf. Peck,

51 F.4th at 891 (finding that officers were not integral participants when they did not know or

should have known that their conduct would lead to an unconstitutional shooting).

---

[12] Injury to those in the area (pedestrians or other drivers) could also be a foreseeable consequence, but the FAC alleges that there were no others in the area when Zazueta performed the PIT maneuver.

Second, with respect to Hatfield boxing-in Mann, the scope of risk associated with boxing-in again encompass injury from an automobile.  Boxing-in was an attempt to stop Mann's vehicle from further flight.  The technique as alleged appears to have been to merely surround Mann's vehicle with three patrol vehicles in a triangle shape.  No physical contact of any kind from the boxing-in is described in the FAC, nor would any physical conduct be necessary to effectively box-in Mann's vehicle.  Considering the nature of "boxing-in," as well as the FAC's description of the pursuit, the scope of the risk of boxing-in Mann's vehicle would seem to be limited to either a patrol vehicle hitting Mann's vehicle or Mann's vehicle hitting a patrol vehicle, and injuries resulting directly from such a collision.  Because boxing-in involved only the use of patrol vehicles, and there are no factual allegations that explain why merely boxing-in Mann's vehicle would lead to an unconstitutional shooting, the FAC fails to plausibly allege an integral participation theory specifically, and a § 1983 claim in general, based on Hatfield's boxing-in Mann's vehicle.[13]  Cf. Peck, 51 F.4th at 891 (finding that officers were not integral participants when they did not know or should have known that their conduct would lead to an unconstitutional shooting).

Third, considering both the authorization of the PIT maneuver and boxing-in technique together, the result does not change.  The FAC contains no factual allegations that suggest an unconstitutional shooting was likely because of Hatfield's conduct.  As explained above, both the PIT maneuver and boxing-in involve only automobiles.  The PIT maneuver involves vehicle-to-vehicle contact only, and boxing-in appears to have simply been a blockade technique in which vehicle-to-vehicle contact will not necessarily occur (and did not occur in this case).  Neither technique requires person-to-person contact or the use firearms.  Even when tethered together, and considering the other facts alleged in the FAC relating to the pursuit (minor offense, low speed pursuit, 15 miles covered over a 20 minute timeframe, rural/unincorporated location at 2:00 a.m.,

---

[13] Again, the FAC does allege that the act of boxing-in Mann "forced" him to maneuver through a gap between the two vehicles.  As discussed above, this allegation is problematic – Mann was previously stopped against the curb and there appears to have been nothing that would have prevented him from simply applying his brakes, putting his car in park, and turning off his car.  The factual allegations suggest that Mann voluntarily continued to drive and did not apply the brakes (which is an obvious and natural reaction to an obstacle in front of car, particularly when Mann was driving at a low speed).  Thus, without more, the allegation that the deputies' boxing-in maneuver "forced" Mann to keep driving through a gap between the patrol vehicles is implausible.

no other traffic, failed or unperformed road-spikes by MPD, multiple teenaged occupants, and multiple deputies), an unconstitutional shooting simply does not suggest itself or clearly fall within the zone of danger that would be reasonably foreseeable from performing these maneuvers. In short, the FAC does not adequately explain why Hatfield knew or should have known that his authorization of the PIT maneuver and participation in boxing-in Mann would together lead to an unlawful shooting.  Therefore, the FAC fails to plausibly allege an integral participation theory specifically, and a § 1983 claim in general, based on Hatfield's authorization of a PIT and his participation in boxing-in Mann.  Cf. Peck, 51 F.4th at 891 (finding that officers were not integral participants when they did not know or should have known that their conduct would lead to an unconstitutional shooting).

As the Mann Plaintiffs correctly point out, proximate cause is generally a question of fact for the jury.  See Christensen v. Georgia-Pac. Corp., 279 F.3d 807, 815-16 (9th Cir. 2001); Lies v. Farrell Lines, Inc., 641 F.2d 765, 770 (9th Cir. 1981); Leaf v. United States, 588 F.2d 733, 736 (9th Cir. 1978).  However, the factual allegations must still plausibly show proximate causation and thus, foreseeability.  See OSU Student Alliance, 699 F.3d at 1076-77; see also Cooper v. Tokyo Elec. Power Co., 166 F.Supp.3d 1103, 1125-26 (S.D. Cal. 2015) (denying motion to dismiss where the complaint plausibly alleged proximate causation); cf. Lies, 641 F.2d at 770 (holding in the context of summary judgment causation is "generally a question of fact for the jury, unless the proof is *insufficient to raise a reasonable inference* that the act complained of was the proximate cause of the injury." (emphasis added and quotation omitted)).  If a complaint does not plausibly show proximate causation, dismissal is appropriate.  See Blom v. UBS Bank USA, 2022 U.S. Dist. LEXIS 228859, *9 (N.D. Cal. Dec. 20, 2022); Pernell v. City of L.A., 2022 U.S. Dist. LEXIS 235108, *8 (C.D. Cal. July 28, 2022); Yoshikawa v. City & Cty. of Honolulu, 542 F.Supp.3d 1099, 1122 (D. Haw. 2021); Elland v. Fohs, 2020 U.S. Dist. LEXIS 227970, *6 (D. Nev. Dec. 4, 2020); Green v. W.L. Gore & Assocs., 2020 U.S. Dist. LEXIS 176069, *9-*10 (D. Idaho Sept. 23, 2020); Terpin v. AT&T Mobility, LLC, 399 F.Supp.3d 1035, 1044 (C.D. Cal. 2019).  As explained above, the factual allegations fail to plausibly demonstrate foreseeability and thus, proximate causation.  The acts authorized and performed by Hatfield involved only

automobiles.  There is nothing to suggest that Mann would keep driving and that Zazueta would suddenly exit his car and unconstitutionally shoot Mann because Hatfield had authorized a PIT maneuver and/or used his vehicle to attempt to box-in Mann's vehicle.  Because the FAC does not adequately demonstrate foreseeability, it does not plausibly allege integral participation liability against Hatfield through a "set in motion" theory.

<u>c.</u>   <u>Aiding and Abetting</u>

The FAC alleges that Hatfield aided and abetted Zazueta for purposes of both the federal and state law claims.  Because of the differing legal ramifications, the Court will separately examine aiding and abetting under federal law and state law.

<u>(1)</u>   <u>Federal Law – 42 U.S.C. § 1983</u>

"[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors."  <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 182 (1994).  That is, "when Congress creates a private cause of action, aiding and abetting liability is not included in that cause of action unless Congress speaks to it explicitly."  <u>Owens v. BNP Paribas, S.A.</u>, 897 F.3d 266, 277 (D.C. Cir. 2018).  Because the text of 42 U.S.C. § 1983 contains no language that authorizes "aiding and abetting" liability, courts have concluded that an "aiding and abetting" theory has no application to a § 1983 claim.  <u>See</u> <u>Rich v. Hersl</u>, 2021 U.S. Dist. LEXIS 118098, *36 (D. Md. June 24, 2021); <u>McDonough v. Toles</u>, 476 F. Supp. 3d 882, 899 (D. Minn. 2020) (". . . there is no such thing as aiding-and-abetting liability under § 1983."); <u>Shao v. Roberts</u>, 2019 U.S. Dist. LEXIS 8443, *60 n.12 (D. D.C. Jan. 17, 2019); <u>W. Daniels Land Ass'n v. Wasatch Cty.</u>, 2011 U.S. Dist. LEXIS 45269, *3-*4 (D. Utah Apr. 26, 2011); <u>Theriot v. Woods</u>, 2010 U.S. Dist. LEXIS 14253, *18-*19 (W.D. Mich. Feb. 18, 2010).

The FAC expressly pleads "aiding and abetting" liability against Hatfield under the § 1983 claims.  Since this theory is inapplicable to § 1983 claims, no plausible claim is stated.  <u>See</u> <u>id.</u>

<u>(2)</u>   <u>California Law</u>

Under California law, a defendant may be held liable for aiding and abetting the tort of

17

another.  See Austin B. v. Escondido Union Sch. Dist., 149 Cal.App.4th 860, 879 (2007).  "Aiding and abetting" is well understood "to imply an intentional participation with knowledge of the object to be obtained."  Lomita Land & Water Co. v. Robinson, 154 Cal. 36, 47 (1908); Upasani v. State Farm Gen. Ins. Co., 227 Cal.App.4th 509, 519 (2014).  That is, liability for aiding and abetting depends on proof that the defendant had actual knowledge of the specific primary wrong that was substantially assisted.  See Casey v. U.S. Bank Nat. Assn., 127 Cal.App.4th 1138, 1144 (2005).  Accordingly, a defendant may be held liable for "aiding and abetting" at tort when the defendant:  (1) had knowledge that a tort was being or was going to be committed; (2) gave substantial assistance or encouragement to the tortfeasor; and (3) the assistance or encouragement was a substantial factor in causing harm to the plaintiff.  See 2 CACI 3610; see also Nasrawi v. Buck Consultants LLC, 231 Cal.App.4th 328, 343 (2014); Upasani, 227 Cal.App.4th at 518.  The twin requirements of actual knowledge of the tort to be committed and the provision of substantial assistance or encouragement ensure that those who may be accidental participants in the tort are not held liable.  See Upasani, 227 Cal.App.4th at 519.  Further, "[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting."  Austin B., 149 Cal.App.4th at 880.

Here, the FAC fails to adequately allege any elements of aiding and abetting liability.  First, the FAC does not plausibly indicate that Hatfield had actual knowledge that Zazueta was going to unlawfully shoot Mann.  If anything, the FAC suggests that Zazueta's conduct was unexpected.  The FAC alleges that Zazueta quickly exited his patrol vehicle even though he was in a safe position, drew his weapon, approached the driver side window, and shot as Mann's vehicle passed by, despite the fact that Zazueta was in no danger from Mann's car.  Second, the FAC fails to allege any conduct by Hatfield that would constitute substantial encouragement or substantial assistance before or during the shooting.  At the time of the shooting, the PIT maneuver and boxing-in had been performed and were complete.[14]  Moreover, while Hatfield authorized the PIT

---

[14] The Court notes that the Mann Plaintiffs' opposition points out several times that Hatfield did not turn on his camera prior to the shooting, even though he had several opportunities to do so.  However, because there are no allegations that Zazueta was aware that Hatfield did not have his camera on, it is unknown how Hatfield having his bodycam off can be considered substantial assistance or encouragement to Zazueta.

maneuver and boxed-in Mann, those actions do not involve in any way the use of a firearm. Because Zazueta's unlawful shooting was not reasonably foreseeable following the performance of those apprehension techniques, it is unknown how Hatfield's authorization of, or participation in, those techniques could be considered encouragement or assistance in the shooting.  Finally, there is no causation.  Without any encouragement or assistance by Hatfield, causation necessarily fails.  Therefore, there is no plausibly alleged "aiding and abetting" liability against Hatfield for the Mann Plaintiffs' state law claims.

  4.  Conclusion

  The FAC fails to plausibly allege that Hatfield's authorization of the PIT maneuver and participation in boxing-in Mann were unreasonable or otherwise unlawful.  Therefore, to the extent that these two actions are intended to support independent stand-alone claims, no plausible claims under either state law or federal law are alleged against any defendant.[15]  Additionally, the FAC does not plausibly support an inference that the authorization of the PIT maneuver and participation in the boxing-in were proximate causes of Zazueta unlawfully shooting Mann because the unlawful shooting was not a foreseeable risk of these apprehension techniques, either considered separately or together.  The absence of proximate causation/foreseeability defeats integral participation liability.  Further, the FAC fails to plausibly allege that Hatfield had a reasonable opportunity to intervene and, for purposes of state law claims, fails to plausibly allege the three elements of aiding and abetting liability.  Therefore, no plausible claims are alleged against Hatfield, and dismissal is appropriate.[16]

---

[15] The Court notes that the Mann Plaintiffs contend that California Const. Art. I § 13 is interpreted more broadly than the Fourth Amendment.  However, the California Supreme Court has held that "reasonableness" is the touchstone for all issues under both the Fourth Amendment and Art. I § 13.  See People v. Buza, 4 Cal.5th 658, 670 (2018); Ingersoll v. Palmer, 43 Cal.3d 1321, 1329 (1987).  As a result, inquiries under the Fourth Amendment and Art. I § 13 ordinarily parallel each other without the need for different analyses.  See Lyall v. City of L.A., 807 F.3d 1178, 1186 n. 7 (9th Cir. 2015); Sanchez v. Cnty of San Diego, 464 F.3d 916, 928-29 (9th Cir. 2006); Buza, 4 Cal.5th at 686; see also Berg v. Cnty. of L.A., 2021 U.S. Dist. LEXIS 195521, *33 (C.D. Cal. May 28, 2021).  The Court is not satisfied that an analysis different from that of the Fourth Amendment is necessary to resolve the Mann Plaintiffs' Art. I § 13 claims.  See id.  As the FAC does not show unreasonable conduct, there is no plausible Art. I § 13 claim against Hatfield.

[16] The Court notes that Hatfield has invoked the immunity of Cal. Gov't Code § 820.8, which provides in part that "a public employee is not liable for an injury caused by the act or omission of another person."  Cal. Gov't Code § 820.8.  While this provision precludes vicarious liability against Hatfield for purposes of Plaintiffs' state law claims, § 820.8 has no application to the extent that any state law claim is based on Hatfield's own negligent or wrongful conduct.  See id.; Rodriguez v. Cnty of L.A., 891 F.3d 776, 799 (9th Cir. 2018).

1        5.      Leave to Amend

2        It is not clear at this point that amendment would be futile.  Therefore, all claims against

3  Hatfield, except for the § 1983 "aiding and abetting" claims, see McDonough, 476 F. Supp. 3d at

4  899, will be dismissed with leave to amend.  Further, any stand-alone claims against the other

5  defendants that are based only on either the authorization and performance of the PIT maneuver or

6  on boxing-in Mann's vehicle will be dismissed with leave to amend.  Any amended complaint

7  should clearly identify all claims, and the bases for those claims, against each Defendant.

8        Additionally, this case was consolidated for all purposes with *Del Alto v. County of*

9  *Stanislaus, et al.*, 1:22-cv-0384 DAD SAB.  Following consolidation, no unified complaint was

10  filed.  Given the dismissal that will be effected through this order, as well as the prior

11  consolidation, it is appropriate for all Plaintiffs to file a consolidated unified complaint.

12        Finally, the *Del Alto* complaint includes a claim by Hector Del Alto against the Estate of

13  Mann.  If Del Alto wishes to continue to pursue a claim against the Estate of Mann, he may file a

14  crossclaim against the Estate that will be separate from the unified complaint against the

15  municipal/law enforcement defendants.  See Fed. R. Civ. P. 13(g); Ryan v. Schneider Nat'l

16  Carriers, Inc., 263 F.3d 816, 819 (8th Cir. 2001) (explaining that a plaintiff was properly permitted

17  to file a crossclaim against a co-plaintiff).

18

19                                          **ORDER**

20        Accordingly, IT IS HEREBY ORDERED that:

21  1.      Defendant Hatfield's motion to dismiss (Doc. No. 70) is GRANTED and all claims against

22          him are DISMISSED with leave to amend, except for § 1983 "aiding and abetting" claims

23          which are DISMISSED without leave to amend;

24  2.      Any claims against the remaining defendants that are based solely on either the

25          performance of the PIT maneuver or boxing-in Mann's vehicle are DISMISSED with

26          leave to amend;

27  3.      Within twenty-one (21) days of service of this order, all Plaintiffs shall file a consolidated

28          unified complaint that shall be entitled as the "Unified Complaint"; and

                                            20

4.    Concurrent with the filing of the "Unified Complain," Plaintiff Hector Del Alto may file a

separate crossclaim against the Estate of Xander Mann if he wishes to continue to pursue

such a claim.

IT IS SO ORDERED.

Dated:   January 30, 2023

_____

SENIOR  DISTRICT  JUDGE